IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY CHERISSE THOMAS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:19-00342-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security*,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Cherisse Thomas brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 19, 21) and those portions of the transcript of the administrative record (Docs. 11, 18-1) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

Commissioner's final decision is due to be **AFFIRMED**.[2]

## I.    *Procedural Background*

Thomas filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on October 10, 2014. After they were initially denied, Thomas requested, and on May 4, 2016, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On April 27, 2017, the ALJ issued an unfavorable decision on Thomas's applications, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 11, PageID.185-201). Thomas requested review of the ALJ's 2017 unfavorable decision with the Appeals Council for the Office of Disability Adjudication and Review. On February 1, 2018, the Appeals Council granted Thomas's request, vacated the ALJ's decision, and remanded the case to the ALJ, with instructions, for further proceedings. (*Id.*, PageID.208-211).

On remand, the same ALJ held another hearing on July 2, 2018, and on September 28, 2018, issued a second unfavorable decision on Thomas's applications. (*Id.*, PageID.53-71). The Commissioner's decision on Thomas's applications became final when the Appeals Council denied her request for review of the ALJ's 2018 unfavorable decision on May 29, 2019. (*Id.*, PageID.46-51). Thomas subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 25, 26; 3/3/2020 text-only order of reference).

of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). As the United States Supreme Court has observed, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). In reviewing the Commissioner's factual findings, the

Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir.

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4]

---

1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based

The "substantial evidence" "standard of review applies only to findings of

---

on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the [Commissioner], and it is well established that no similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211

(11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires that a claimant be "disabled," 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such

circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Thomas met the applicable insured status requirements through March 31, 2016, and that she had not engaged in

substantial gainful activity since the alleged disability onset date of July 31, 2011.[7] (Doc. 11, PageID.58). At Step Two,[8] the ALJ determined that Thomas had the following severe impairments: obesity, diabetes, hypertension, degenerative disc disease, shoulder impingement syndrome, and affective disorder. (Doc. 11, PageID.58-59). At Step Three,[9] the ALJ found that Thomas did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 11, PageID.59-61).

   At Step Four,[10] the ALJ determined that Thomas had the residual functional

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[10] At Step Four,

capacity (RFC) "to perform sedentary work as defined in 20 CFR 404.1567(a) and

416.967(a),[11] which consists of lifting and carrying up to 10 pounds occasionally

---

> the ALJ must assess: (1) the claimant's residual functional capacity
> ("RFC"); and (2) the claimant's ability to return to her past relevant
> work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the
> regulations define RFC as that which an individual is still able to do
> despite the limitations caused by his or her impairments. 20 C.F.R. §
> 404.1545(a). Moreover, the ALJ will "assess and make a finding about
> [the claimant's] residual functional capacity based on all the relevant
> medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).
> Furthermore, the RFC determination is used both to determine
> whether the claimant: (1) can return to her past relevant work under
> the fourth step; and (2) can adjust to other work under the fifth
> step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will
> conclude that the claimant is not disabled. 20 C.F.R. §
> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past
> relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant
> work, the ALJ must determine the claimant's RFC using all relevant
> medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That
> is, the ALJ must determine if the claimant is limited to a particular
> work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the
> claimant's RFC and determines that the claimant cannot return to her
> prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[11] "To determine the physical exertion requirements of different types of
employment in the national economy, the Commissioner classifies jobs as sedentary,
light, medium, heavy, and very heavy. These terms are all defined in the
regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d
at 1239 n.4. The criteria for "sedentary" work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one which involves
> sitting, a certain amount of walking and standing is often necessary in

and less than 10 pounds frequently, sitting in two-hour increments with customary breaks, and walking no more than 2 hours total in an 8-hour workday[, and s]he is limited to occasional pushing, pulling and stooping; but never climbing, balancing, kneeling, crouching, or crawling[;] is able to frequently handle, finger, and feel[;] cannot reach overhead but can reach in all other directions frequently[;] should avoid operation of foot controls, exposure to unprotected heights, moving mechanical parts, and vibration[;] can operate motor vehicles occasionally[;] can tolerate occasional exposure to extreme heat and cold[;] can perform simple, routine tasks in 2-hour increments with normal breaks for the duration of an 8-hour workday; with occasional interaction with the public; and occasional change in a routine work setting." (Doc. 11, PageID.61-68). Based on the RFC and the testimony of a vocational expert,[12] the ALJ determined that Thomas was unable to perform any past relevant work. (Doc. 11, PageID.68-69).

At Step Five, after considering additional testimony from the vocational expert, the ALJ found that there existed a significant number of other jobs in the

---

carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

[12] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

national economy that Thomas could perform given her RFC, age, education, and work experience. (*Id.*, PageID.69-70). Thus, the ALJ found that Thomas was not disabled under the Social Security Act. (*Id.*, PageID.70-71).

## IV.    *Analysis*

### A.    **Diabetic Neuropathy**

Thomas argues that the ALJ erred in finding that her diabetic neuropathy was only a non-severe impairment at Step Two, which also caused the ALJ to erroneously fail to evaluate Listing 11.14 (peripheral neuropathy) at Step Three. No reversible error has been shown.

"At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Accordingly, the Eleventh Circuit has repeatedly held that where, as here, an ALJ found at least one severe impairment and proceeded to the next steps of the sequential evaluation, any error in not classifying other impairments as "severe" is harmless.[13] Thus, any error in the ALJ's failure to classify Thomas's diabetic

---

[13] *See e.g.*, *Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018) (per curiam) (unpublished) ("Step two is a 'filter' which eliminates groundless claims. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). To meet his burden at this step, Mr. Wood only had to show 'at least one' severe impairment. *See id.* He met his burden and the ALJ appropriately proceeded to the next step of

neuropathy "severe" at Step Two is harmless.

At Step Three, the ALJ stated that Thomas "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…" (Doc. 11, PageID.59). The Eleventh Circuit has repeatedly held that such language, while conclusory, is sufficient to satisfy the Commissioner's burden at Step Three to show

---

the sequential analysis. Therefore, any error in not finding additional severe impairments did not harm Mr. Wood."); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished) ("In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (per curiam) (unpublished) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test."); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("[S]tep two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability." (citing *Jamison*, 814 F.2d at 588)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("Based on our precedent and the regulations, … it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010) (per curiam) (unpublished) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires."). *But see Schink*, 935 F.3d at 1268 (noting determination that substantial evidence did not support ALJ's finding the claimant's mental impairments to be non-severe "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered Schink's mental impairment when assessing his RFC, and reached conclusions about Schink's mental capabilities supported by substantial evidence[,]" but finding reversible error where ALJ's RFC only considered claimant's physical abilities and impairments).

consideration of all impairments, both severe and non-severe, both singly and in combination, under all relevant listings. *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam); *Reeves v. Bowen*, 841 F.2d 383, 385 (11th Cir. 1988) (per curiam); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished).[14] Thus, there was no error in the ALJ's

---

[14] *Also cf. Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("While Appendix 1 must be considered in making a disability determination, it is not required that the [Commissioner] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing. *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir.1984). We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments."); *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841 (11th Cir. 2019) (applying *Hutchison* to find that ALJ, despite "not mak[ing] specific findings as to any impairments in the Listings[,]" implicitly indicated that all relevant listings were considered by "also explicitly f[inding] that Baile's impairments, individually and in combination, did not meet <u>any</u> listed impairment"). That the ALJ specifically discussed certain listings that were given "particular attention" does not indicate that she failed to consider all relevant listings at Step Three. *See Bailey*, 782 F. App'x at 842 n.5 ("While specific findings as to the Listings in Appendix 1 are not required, we have noted 'that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued.' " (quoting *Barron v. Sullivan*, 924 F.2d 227, 230 n.3 (11th Cir. 1991)); *Hill v. Saul*, No. CV 1:18-00326-N, 2019 WL 4308766, at *8 (S.D. Ala. Sept. 11, 2019) ("Given the Eleventh Circuit has indicated that, though not required, it would be 'helpful' for ALJs to specifically discuss Listings that were given special consideration at Step Three, the undersigned will not penalize the ALJ for pointing out that she had given special consideration to Listing 11.04, and will accept her Step Three statement that Hill's impairments 'do not meet or equal any requirements of any section' of the Appendix 1 Listings as implicitly indicating she considered all of those Listings, including Listings 2.03B and 2.04B." (relying on *Bailey*, 782 F. App'x at 842 n.5).

failure to specifically discuss Listing 11.14 at Step Three.[15]

## B.    Medical Opinions

Thomas also argues that the ALJ erred in weighing certain medical opinions in the record. The undersigned disagrees.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2)

---

[15]    The only evidence that Thomas points to as indicating she meets Listing 11.14 is that the ALJ found in the RFC she could "never balance," and that she was prescribed a walker due to recurrent falls. (*See* Doc. 19, PageID.803). The undersigned is not convinced that this evidence alone is sufficient to demonstrate an "extreme limitation" to show disability under Listing 11.14A, and Thomas does not qualify under Listing 11.14B because the ALJ found she only had "moderate" limitations in the four "paragraph B" criteria at Step Three (see Doc. 11, PageID.59-60), a finding that Thomas does not challenge. A finding of "marked" limitation in at least one of those criteria is required to satisfy Listing 11.14B.

While Thomas does not expressly argue the point, the undersigned also concludes that the ALJ's decision shows adequate consideration of Thomas's neuropathy at Step Four.

the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[16]

The opinions of non-treating physicians "are not entitled to deference ..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight."). However, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). "Good cause exists

---

[16] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject applications. *Compare* 20 C.F.R. §§ 404.1520c,416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017).

'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion."). "An administrative law judge may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), and failure to clearly articulate the reasons for giving less than substantial or considerable weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 0808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212). [17]

---

[17] Thomas conclusorily argues that "[t]he Commissioner's RFC assessment must be

The same ALJ issued both unfavorable decisions on Thomas's applications. The ALJ gave "great weight" to the medical opinion of consultative examining orthopedic physician Dr. Suanne White-Spunner in the first unfavorable decision, but only "partial weight" in the second unfavorable decision that constitutes the Commissioner's final decision. Thomas appears to argue that the ALJ was bound by the "great weight" given in the first decision and was required to include the limitations in Dr. White-Spunner's opinion in the second decision's RFC, or to at least explain why she gave Dr. White-Spunner less weight on remand. However, as the Commissioner correctly points out, because the Appeals Council vacated the first unfavorable decision before remanding Thomas's case, the ALJ was not bound by the first decision and was permitted to, within the parameters of the Appeals Council's remand instructions, *see* 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take

---

supported by the RFC assessment of a treating or examining physician" (Doc. 19, PageID.797), but cites no authority to support that proposition. While certain opinions of this Court at one time supported this assertion, "[t]he opinion of a district court carries no precedential weight, even within the same district[,]" *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam); *see also, e.g., Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quotation omitted)), and that line of cases has since been largely disavowed by the judges of this Court. *See Williams v. Berryhill*, No. CV 17-00346-N, 2018 WL 3236052, at *6 n.9 (S.D. Ala. July 2, 2018) (citing cases); *Chatman v. Saul*, No. CV 1:18-00475-N, 2020 WL 569353, at *8 n.15 (S.D. Ala. Feb. 5, 2020). *See also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (quotation omitted)).

any additional action that is not inconsistent with the Appeals Council's remand order."), give fresh consideration to the evidence.[18] Thomas cites no authority indicating that an ALJ whose decision is vacated is required to explain why she reached different factual conclusions in a subsequent decision, and "[i]n light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions." *Hunter*, 808 F.3d at 822. Because Dr. White-Spunner was not a treating physician, her medical opinion was not entitled to deference. Moreover, the ALJ's assigning Dr. White-Spunner's opinion only partial weight in the second decision addressed some of the concerns in the Appeals Council's remand order, which noted that the ALJ's first decision failed to account for some aspects of Dr.

---

[18] *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 683–84 (11th Cir. 2019) (per curiam) (unpublished) ("Jackson … asserts that, because the ALJ assigned great weight to Dr. Iyer's opinion in the first decision denying her application, *res judicata barred* the ALJ from assigning limited weight to the opinion in the second decision … Administrative *res judicata* applies when the agency has 'made a previous determination or decision ... about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision has become final by either administrative or judicial action.' 20 C.F.R. § 404.957(c)(1). A decision that has been vacated, however, has no preclusive effect. *Cf. Quarles v. Sager*, 687 F.2d 344, 346 (11th Cir. 1982) ('Claim preclusion does not apply in this case. The judgment of the district court was vacated; thus, no final judgment on the merits exists.'). []Jackson's argument is misplaced because there was no final decision binding the ALJ from discounting Dr. Iyer's opinion. *See* 20 C.F.R. § 404.957(c)(1). Rather, the Appeals Council vacated the initial decision, so it could have no preclusive effect. *See Quarles*, 687 F.2d at 346."); *Milam v. Comm'r of Soc. Sec.*, 734 F. App'x 697, 699–700 (11th Cir. 2018) (per curiam) ("Here, *res judicata* does not apply because the Appeals Council vacated the ALJ's order containing the July 2, 2010 onset date. And, contrary to Milam's argument, the district court did not direct the Appeals Council to remand the case to the ALJ for a limited purpose. Further, when the Appeals Council vacated the ALJ's order, it did not preserve any portion of the ALJ's findings. The ALJ, therefore, was not precluded from reconsidering Milam's onset date.").

White-Spunner's opinion despite purporting to give it "great weight." (*See* Doc. 11, PageID.209-210).

For instance, the Appeals Council noted Dr. White-Spunner's opinion that Thomas "has a complete inability to perform all postural activities, including balancing and stooping[,]" and that on remand "further consideration of the claimant's ability to stoop and the impact of that limitation is warranted" because "a complete inability to stoop would usually warrant a finding of disabled…" (*Id.* (footnote omitted)). On remand, the ALJ found that Thomas could occasionally stoop, and assigned "[p]artial weight" to Dr. White-Spunner's opinion "only to the extent consistent with" the RFC, otherwise rejecting "any check marks or suggestion of greater limitation based on objective evidence and the longitudinal record." (*Id.*, PageID.65). Thomas argues that the ALJ failed to address Dr. White-Spunner's stooping limitation on remand. However, the ALJ correctly noted Dr. White-Spunner's observation that Thomas "was almost able to touch her toes and returned upright without any significant difficulty" at the examination (*id.*, PageID.65-66, 691), thus sufficiently indicating why she did not adopt Dr. White-Spunner's "no stooping" limitation.

The ALJ also found that Thomas "cannot reach overhead but can reach in all other directions frequently" (Doc. 11, PageID.61), while Dr. White-Spunner opined that Thomas could never reach overhead and only "occasionally" (i.e., "up to 1/3" of the time) reach in all other directions (*see id.*, PageID.684). The ALJ assigned "partial weight to Dr. White-Spunner's report of upper extremity limitations,"

explaining that "[t]he restriction of no overhead reaching is reasonable, given some evidence of shoulder impingement with reduced range of motion; however, no greater upper extremity limitation is warranted at the sedentary exertional level, based on diagnostic imaging, minimal complaints in treatment notes, and minimal treatment for upper extremity complaints throughout the record." (*Id.*, PageID.66). Thomas challenges this assessment, but the only evidence she cites to contradict it is references to generalized complaints of back, leg, and shoulder pain in the record, and a portion of Dr. White-Spunner's examination notes showing " 'impingement syndrome in both shoulders' with range of motion limitation that was 12-22% in forward flexion and abduction and 45-66% in internal rotation, both of which would affect her reaching in all directions." (Doc. 19, PageID.804 (citing Doc. 11, PageID.678)).[19] Generalized complaints of pain do "not reveal the extent to which they limit her ability to work[,]" *Moore*, 405 F.3d at 1213 n.6, and Thomas fails to explain how the range-of-motion limitations she cites are inconsistent with a finding of frequent (but not unlimited) ability to reach in all directions. *See Bloodsworth*, 703 F.2d at 1239 (a court cannot "reweigh the evidence[] or substitute [its] judgment for that of the [Commissioner]").[20]

---

[19] Thomas also complains that the ALJ's reaching assessment is inconsistent with her first unfavorable decision, but as has been explained, the ALJ was not bound by that vacated decision on remand.

[20] Thomas also challenges the ALJ's finding that, "[a]lthough the claimant has an inability to afford medical treatment, there is no evidence that she sought free or reduced cost treatment, and none was available." (Doc. 11, PageID.66). While the significance of this statement in the ALJ's decision is not entirely clear, the undersigned concludes that this finding did not substantially influence the ALJ's

The ALJ also gave "limited weight" to the opinions of treating physician Dr. Stephen Chromiak, finding that it was not bolstered by the record evidence. (Doc. 11, PageID.66). Thomas also challenges this finding, claiming that "[t]he record … is replete with references to the claimant's uncontrolled diabetes and diabetic neuropathy which can cause the muscle weakness of which the claimant complained." (Doc. 19,PageID.801). Even accepting this statement as true, at most she is claiming that Dr. Chromiak's opinion is valid based solely on the fact that she has [diabetes and diabetic neuropathy]. However, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6.

Accordingly, Thomas has failed to show any reversible error in the ALJ's consideration of the medical opinions of record.

### C.     Vocational Expert Hypothetical

Thomas's final claim of reversible error is that the ALJ failed at Step Five to "pose a hypothetical question which comprises all of [Thomas]'s impairments[,]" as required "for a vocational expert's testimony to constitute substantial evidence…" *Wilson*, 284 F.3d at 1227. However, this claim assumes the success of Thomas's other claim that the ALJ erred in not giving greater weight to Dr. White-Spunner and Dr. Chromiak's opinions. As noted above, no reversible error was shown in that regard, and an ALJ is "not required to include findings in the hypothetical that the

decision in assigning partial weight to Dr. White-Spunner's opinion.

ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.[21]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Thomas's applications for benefits is therefore due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Thomas's October 10, 2014 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 4th day of December 2020.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] As for any other claims of error raised in Thomas's brief not expressly addressed herein, the Court finds that those arguments have been waived because they were "raise[d] in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). *See also Revel v. Saul*, No. CV 1:19-00248-N, 2020 WL 6472640, at *7 & n.12 (S.D. Ala. Nov. 3, 2020) (citing Eleventh Circuit cases applying *Sapuppo* in Social Security appeals, and applying the *Sapuppo* rule to review in district court). Thomas also waived consideration of any claims of error raised for the first time at oral argument. *See* (Social Security Scheduling Order, Doc. 5, PageID.26 (requiring that the plaintiff's brief "list[] the specific errors upon which plaintiff seeks reversal of the Commissioner's decision")); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) (court of appeals does "not consider claims not raised in a party's initial brief and made for the first time at oral argument").